IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| RUTH L. JOBE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 07-4152-CV-C-NKL |
| ) | |
| MEDICAL LIFE INSURANCE ) | |
| COMPANY, n.k.a. FORT DEARBORN ) | |
| LIFE INSURANCE COMPANY, ) | |
| ) | |
| Defendant. | |

**ORDER**

Plaintiff Ruth L. Jobe ("Jobe") asserts that Defendant Medical Life Insurance Company, n.k.a. Fort Dearborn Life Insurance Company ("Fort Dearborn"), wrongfully denied her claim for benefits under her employer's long-term disability plan ("plan") in violation of the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. ("ERISA"). Pending before the Court are cross-motions for summary judgment [Doc. # 29; Doc. # 33]. The Court grants summary judgment in favor of Fort Dearborn.

**I.    Factual Background**

On July 29, 2003, Jobe became eligible for benefits under a Group Insurance Policy ("policy") issued by Fort Dearborn. At the time, Jobe was a medical transcriptionist with Lake Regional Health System. The Fort Dearborn policy was part of her employer's ERISA benefit plan. On July 30, 2003, Jobe enrolled in the plan. (Exhibit Attachment ("EA") at

1

ltdclm00158). The plan provides benefits to employees if they become totally disabled by a sickness. Under the policy:

> SICKNESS means illness, disease, pregnancy, or complications of pregnancy. The sickness must begin while the Employee is insured under the policy.
>
> MATERIAL AND SUBSTANTIAL DUTIES means duties that:
>
> > 1. are normally required for the performance of the Insured's Regular Occupation; and
> >
> > 2. cannot be reasonably omitted or modified, except that if the Insured is required to work on an average in excess of 40 hours per week, the Company will consider the Insured able to perform that requirement if the Insured is working or has the capacity to work 40 hours per week.
>
> TOTAL DISABILITY or TOTALLY DISABLED means during the elimination period and the next (24) months of disability the Insured is:
>
> > 1. unable to perform the Material and Substantial Duties of the Insured's Regular Occupation because of a disability:
> >
> > > a. due to the Insured's Sickness or Injury; and
> > >
> > > b. that started while insured under this coverage; and
> >
> > 2. after 24 months of benefits have been paid, the Insured will continue to receive payment only if the Insured cannot perform with reasonable continuity the Material and Substantial Duties of his Regular Occupation or any other occupation for which he is or becomes reasonably fitted by training, education, experience, age and physical and mental capacity.
>
> REGULAR OCCUPATION means the occupation the Insured is routinely performing when the Insured's disability begins. We will look at the Insured's occupation as it is normally performed in the national economy, instead of how other work tasks are performed for a specific Employer or at a specific location.

(EA at pol100004-6).

The policy also provides that the policy is a complete contract that consists of:

    a. all of the pages;

    b. the attached Application of the policyholder;

    c. the participating employers' Applications for Group Voluntary benefits; or

    d. each Employee's application for insurance (Employee retains his own copy).

(EA at pol00022).

While the policy itself does not grant the administrator discretionary authority to review, grant, and deny claims, the Employee Benefit Booklet states, "In making any determination regarding the benefits under the policy, we shall have the discretionary authority to determine an individual's eligibility for benefits and to interpret the terms of the policy." (EA at uw00084). The Employee Benefit Booklet states that it serves as the Summary Plan Disposition ("SPD") of the policy. (EA at pol0039).

On January 22, 2001, Jobe was diagnosed with polycythemia and polycythemia vera, conditions involving a net increase in the number of red blood cells. (EA at clm10618). Jobe also experienced vision problems throughout 2003. (EA at clm10519-25). Jobe's ophthalmologist, Dr. Timothy D. Lischwe, noted Jobe's history of polycythemia in his records of Jobe's visits. (EA at clm10520-23). Dr. Lischwe noted that Jobe's visual acuity showed left eye vision at 20/25, right eye vision of 20/HM on peripheral to two feet, which is less than

3

20/200. Dr. Lischwe's assessment was amaurosis fugax and ischemic optic neuropathy. *Id.* On April 15, 2004, Dr. Stanley P. Hayes, a rheumatologist, diagnosed Jobe with Fibromyalgia. (EA at clm10488). Dr. Hayes noted that "clinical symptoms and exam would indicate soft tissue pain only consistent with Fibromyalgia." *Id.* Dr. Hayes also noted that Jobe could move independently, was fully alert and communicative, did not seem to be in acute distress, had no joint abnormalities, and had a normal range of motion. On June 23, 2004, Jobe underwent a hysterectomy. (EA at clm10405). Jobe's gynecologist, Dr. Robert C. Neilson, noted the history of polycythemia in his comments on the operation. *Id.*

On July 2, 2004, Jobe completed a claim for benefits under the plan and submitted it to Fort Dearborn along with a statement from her attending physician, Dr. Leonard Chris Franklin. (EA at ltdclm00156-57). Dr. Franklin listed his diagnoses on the attending physician's form as "Fibromyalgia, CVA/TIA, worsening polycythemia rubra vera resulting in prolonged severe hemorrhage & hysterectomy." (EA at ltdclm00157). Dr. Franklin also noted in the "objective findings" section of the form that "Pt. has limited range of motion in joints, spine, hands, fingers, multiple neurologic deficits - treatment limited due to other medical conditions as listed." *Id.* On the same form, Dr. Franklin checked the "functional capacity (American Heart Ass'n)" box as "Class 4: Complete Limitation." *Id.* Dr. Franklin checked the "physical impairments (as defined in Federal Dictionary of Occupational Titles)" box as "Class 5 - Severe Limitation of functional capacity; including minimum (sedentary) activity." *Id.* Dr. Franklin also checked the mental impairments box as "Class 3 - Patient is able to engage in only limited stress situations and engage in only limited interpersonal

4

relations (moderate limitations)." *Id.* On August 4, 2004, Dr. Franklin wrote a letter describing Jobe's medical conditions in further detail, stating:

> This patient will never be able to return to work. She will not be released by me to return to work in any form or type. She has impaired motor skills. Simple grasp is limited . . . . She is not cleared for any work activity, including sedentary, light, medium, or heavy activity . . . . She is unable to lift or work in any environment because of her multiple medical diagnoses, as listed above, multiple neurologic deficits, memory and cognitive impairments, severe chronic debilitating pain, severe chronic fatigue, and her lack of treatment options. She is to avoid stress. She is to obtain as much rest as possible, take her medications as described (sic), and do gentle exercises within her limitations. She is to continue to see me for monitoring of her CBC, phlebotomy as needed, and for monitoring of symptoms and medication. This patient is totally disabled. Her condition is permanent and terminal.

(EA at 10170-76).

On August 13, 2004, Fort Dearborn contacted Jobe to advise her that they had received her claim and that Disability RMS ("DRMS") would be handling the processing of her claim. (EA at ltdclm00162). Fort Dearborn faxed Jobe's claim to DRMS on August 13, 2004. (EA at ltdclm00153-54). DRMS apparently lost the claim. Jobe contacted Fort Dearborn on August 30, 2004, and indicated that DRMS informed her that they had no record of her claim. (EA at ltdclm00152). On September 15, 2004, emails were exchanged between Defendant and DRMS stating "Wow! This is a crazy one!" (EA at ltdclm00145).

DRMS eventually received the claim and began collecting medical records from Jobe's previous medical providers. DRMS collected records from Dr. Franklin, Dr. George Anthony Koch (infectious diseases), Dr. Lischwe, Dr. Lenworth Johnson (neuro-opthalmology, Dr. Trendle (hematology), Dr. Paul Gill (hematology), Dr. Hayes, and Dr.

Nielsen.

On September 20, 2004, as part of a medical file review for Jobe's short-term disability carrier, Dr. Sharon Hogan found that based upon the medical data available to her, the diagnoses of TIA/CVA and polycythemia vera were unsupported by evidence. Dr. Hogan did not expressly state that the evidence supported Jobe's diagnosis of fibromyalgia. Dr. Hogan did say that if restrictions on work could be accommodated for Jobe, then her condition "should not preclude full-time work capacity." (EA at clm10217). Dr. Hogan further explained:

> Reasonable restrictions and limitations with fibromyalgia are:
> Changes in position as needed, with no prolonged sitting, standing, or walking at any one given time. No lifting more than 20 lbs. Occasionally. No prolonged static posturing. No prolonged activities with the arms above shoulder level.

*Id.* Dr. Hogan contacted Dr. Hayes, Jobe's rheumatologist, via a pre-printed letter. Dr. Hayes returned the form after checking the yes box next to a question about whether Jobe could work if certain restrictions and limitations are accommodated in the workplace. (EA at clm10215). After receiving a similar form from Dr. Hogan, Dr. Franklin responded by sending a written letter expressing his disagreement with Dr. Hogan and reiterating his previous diagnoses in detail. (EA at clm10210-13).

DRMS then requested Dr. Thomas Reeder to review Jobe's medical file review. He issued his report on October 26, 2004. (EA at clm10153-59). Dr. Reeder stated that "most, if not all, of Dr. Franklin's claimed diagnoses are not supported by medical documentation." (EA at clm10158). Dr. Reeder did not state that Jobe needed any accommodations in the

workplace in order to continue full-time work capacity, nor did he make a statement as to Jobe's work ability.

Based on this record, Fort Dearborn denied Jobe's claim on November 15, 2004. (EA at clm00052). On the same day, an employee at DRMS emailed Jobe's claim handler and stated, "I loved your 9 page denial letter." (EA at clm10028). Jobe appealed the decision and sent a 16 page letter expressing her disagreement with Fort Dearborn's decision. After assigning Jobe's appeal to a different claims handler, DRMS obtained an additional medical file review from Dr. Mark Friedman. (EA at clm00048; EA at clm20318-35). Dr. Friedman stated that Dr. Franklin's records "provide no basis for the conclusion of Dr. Franklin that the claimant is disabled due to the multiple conditions claimed." Dr. Friedman's conclusion was "[n]o evidence of limitations from a sedentary to light position consistent with a medical transcriptionist position." (EA at clm20335). Dr. Franklin received a copy of Dr. Friedman's report and responded, "No, I don't agree," without further explanation. (EA at clm20314).

DRMS also obtained advice from a vocational consultant, Ruby McDonald. On February 25, 2005, McDonald noted:

> First, it is a sedentary position. Secondly, there could be, and in fact there typically are . . . allowances for changes in position and ergonomically proper work stations, by employer of people in this profession. The ability to change positions from sitting to standing and vice versa can easily be accomplished with the use of a headset with a longish cord and/or a sit/stand work station . . . . Allowing an employee to change positions as needed and/or providing a sit-stand workstation are reasonable accommodations under the Americans with Disability Act (ADA) . . . . One transcriptionist I recently interviewed advised the following: Working as a transcriptionist almost requires 5-10

7

> minute breaks to stretch, change positions, etc . . . . Headsets enable the transcriptionist to be able to go from a sit to stand position at anytime.

(EA at 20286-89). McDonald also submitted information from an Occupational Directory which stated that the medical transcriptionist occupation requires, "Lifting, Carrying, Pushing, Pulling 10 lbs. occasionally. Mostly sitting, may involve standing or walking for brief periods of time." *Id.* A DRMS employee responded to McDonald via email, stating, "Great. Thank (sic) Ruby." (EA at clm20290).

On February 28, 2005, DRMS again denied Jobe's claim. On August 25, 2005, Jobe requested a second appeal of her claim, submitting additional medical information from Dr. Franklin and information from an unfavorable Social Security Administration decision issued on August 16, 2004. The information from Dr. Franklin included a comprehensive analysis of Jobe's condition and a "Residual Functional Capacity Questionnaire," which indicated that Jobe can only sit, stand, walk, and work 0-1 hours in an 8 hour time period, and that her limitations are due to severe chronic pain caused by fibromyalgia and chronic fatigue immune dysfunction syndrome. DRMS obtained a second medical review from Dr. Friedman in which he stated that his opinion of Jobe's status remained unchanged. Dr. Friedman also noted that "the only claim of possible substance is the vocational rehabilitation evaluation" performed by the Social Security Administration ("SSA") and recommended that a vocational expert review this report. Dr. Friedman also noted that Jobe did not submit this social security evaluation to DRMS. As far as the record shows, this SSA report was never submitted to Fort Dearborn or DRMS. (EA at clm20071-77).

8

Case 2:07-cv-04152-NKL   Document 47   Filed 07/21/08   Page 8 of 19

> minute breaks to stretch, change positions, etc . . . . Headsets enable the transcriptionist to be able to go from a sit to stand position at anytime.

(EA at 20286-89). McDonald also submitted information from an Occupational Directory which stated that the medical transcriptionist occupation requires, "Lifting, Carrying, Pushing, Pulling 10 lbs. occasionally. Mostly sitting, may involve standing or walking for brief periods of time." *Id.* A DRMS employee responded to McDonald via email, stating, "Great. Thank (sic) Ruby." (EA at clm20290).

On February 28, 2005, DRMS again denied Jobe's claim. On August 25, 2005, Jobe requested a second appeal of her claim, submitting additional medical information from Dr. Franklin and information from an unfavorable Social Security Administration decision issued on August 16, 2004. The information from Dr. Franklin included a comprehensive analysis of Jobe's condition and a "Residual Functional Capacity Questionnaire," which indicated that Jobe can only sit, stand, walk, and work 0-1 hours in an 8 hour time period, and that her limitations are due to severe chronic pain caused by fibromyalgia and chronic fatigue immune dysfunction syndrome. DRMS obtained a second medical review from Dr. Friedman in which he stated that his opinion of Jobe's status remained unchanged. Dr. Friedman also noted that "the only claim of possible substance is the vocational rehabilitation evaluation" performed by the Social Security Administration ("SSA") and recommended that a vocational expert review this report. Dr. Friedman also noted that Jobe did not submit this social security evaluation to DRMS. As far as the record shows, this SSA report was never submitted to Fort Dearborn or DRMS. (EA at clm20071-77).

On December 19, 2005, Fort Dearborn denied Jobe's claim for the third time, noting that this was the "final review" and that Jobe had exhausted all administrative remedies. (EA at clm20061-63).

On September 5, 2006, Jobe informed Fort Dearborn that she received a favorable appeals decision from the SSA. (EA at clm20012-14). On October 6, 2006, Fort Dearborn informed Jobe that its position remained unchanged. On June 25, 2007, Jobe commenced this action against Fort Dearborn.

## II.     Summary Judgment Standard

A moving party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A defendant who moves for summary judgment bears the burden of showing that there is no genuine issue of material fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). When considering a motion for summary judgment, a court must scrutinize the evidence in the light most favorable to the nonmoving party and the nonmoving party "must be given the benefit of all reasonable inferences." *Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp.*, 950 F.2d 566, 569 (8th Cir. 1991).

## III.    Discussion

### A.    ERISA Standard of Review

ERISA provides a plan beneficiary with the right to judicial review of a benefits determination. *See Woo v. Deluxe Corp.,* 144 F.3d 1157, 1160 (8th Cir. 1998). The Court

9

generally reviews de novo a denial of benefits governed by ERISA. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). However, where the plan gives the administrator discretionary authority to grant or deny benefits, the Court reviews the administrator's determination for an abuse of discretion. *Id.*

Jobe argues that the Court should apply the de novo standard of review because the policy contains an "integration clause" that purports to name the policy, the application of the policyholder, the participating employers' applications, and each Employee's application for insurance as the "complete contract." None of these documents grants the administrator discretionary authority. Fort Dearborn, however, argues that the Employee Benefit Booklet, which grants Fort Dearborn discretionary authority to determine disability, is part of the policy because it serves as the policy's SPD. The Eighth Circuit has held that "SPDs are considered part of the ERISA plan documents." *Jensen v. SIPCO, Inc.*, 38 F.3d 945, 950 (8th Cir. 1994) (holding that ERISA plans must be established by a written instrument and that SPDs are part of the written instruments). Because the SPD granted discretionary authority to the plan administrator, the Court reviews the plan administrator's decision under the abuse of discretion standard.

### B. Level of Deference - **Conflict of Interest**

Jobe alleges that, even if abuse of discretion is the appropriate standard, under the two-pronged test outlined in *Woo*, the Court should still review the administrator's decision with less deference because Fort Dearborn operated under a conflict of interest. Under *Woo*, "[t]o obtain a less deferential review, [the plaintiff] must present material, probative evidence

10

demonstrating that (1) a palpable conflict of interest or a serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator's fiduciary duty to her." 144 F.3d at 1161 (citing *Buttram v. Cent. States, Se. & Sw. Areas Health & Welfare Fund*, 76 F.3d 896, 900 (8th Cir. 1996)). Under this approach, a plaintiff must satisfy both prongs, although "[t]o satisfy the second part of this requirement, [the plaintiff] must only show that the conflict or procedural irregularity has 'some connection to the substantive decision reached.'" *Id.* Once a plaintiff has presented evidence warranting a less deferential standard of review, *Woo* required the district court to apply a "sliding scale approach." *Id.* "This approach...requires the courts to apply an abuse of discretion analysis, taking into consideration the conflict or procedural irregularity. The abuse of discretion standard is inherently flexible, which enables reviewing courts to simply adjust for the circumstances." *Id.* According to *Woo*, applying the "sliding-scale" approach means that "the evidence supporting the plan administrator's decision must increase in proportion to the seriousness of the conflict or procedural irregularity." *Id.* at 1162.

A recent Supreme Court case, however, mandates a different, although similar, approach. In *Metropolitan Life Insurance Co. v. Glenn*, 128 S. Ct. 2343, No. 06-923, 2008 WL 2444796 (2008), the Supreme Court held that, even where a plan grants discretionary authority to the administrator, a conflict of interest always exists where an employer or an insurer both administers a plan and determines eligibility of plan participants. *Id.* at *5-*7. Applying *Firestone*, the Supreme Court explained that this conflict of interest does not "change the standard of review, say, from deferential to de novo review." *Id.* at *7. Instead,

11

a district court is to weigh the conflict "as a 'factor in determining whether there is an abuse of discretion.'" *Id*. (quoting *Firestone*, 489 U.S. at 115). Thus, "conflicts are but one factor among many that a reviewing judge must take into account." *Id*. at *8. "[A]ny one factor will act as a tiebreaker when the other factors are closely balanced." *Id*. at *9. In such situations, "the degree of closeness necessary depend[s] upon the tiebreaking factor's inherent or case-specific importance." In applying this approach, the Supreme Court explained:

> The conflict of interest at issue here, for example, should prove more important (perhaps of great importance) *where circumstances suggest a higher likelihood that it affected the benefits decision*, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration. . . . It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits.

*Id.* at *9 (emphasis added and citation omitted).

The Eighth Circuit has applied *MetLife's* analysis in *Wakkinen v. UNUM Life Insurance Co.*, No. 06-3054, WL 2597088 (8th Cir. July 2, 2008) ("We are to review an administrator's discretionary benefit determination for an abuse of discretion."). In *Wakkinen*, the Eighth Circuit followed *MetLife's* instructions by balancing the conflict of interest with other case-specific factors to determine whether the Insurer abused its discretion. The Court ultimately determined that UNUM did not abuse its discretion, despite the conflict of interest, in part because the record did not support one of Wakkinen's

12

arguments and the medical evidence submitted by the treating doctor did not conclusively establish that Wakkinen was disabled.

Thus, according to *MetLife* and *Wakkinen*, Fort Dearborn was acting under a conflict of interest in denying Jobe's benefits. The standard of review remains abuse of discretion, yet Fort Dearborn's conflict of interest must be balanced with other case-specific factors to determine if there was an abuse of discretion.

### C. Sliding Scale of Deference - Procedural Irregularity

Jobe also alleges that Fort Dearborn committed a serious procedural irregularity which caused a breach of Fort Dearborn's fiduciary duty as an administrator. *See Woo*, 144 F.3d at 1160. Because *MetLife* discusses only a conflict-of-interest situation, the Court will continue to analyze a procedural irregularity under *Woo*. *See Wakkinen*, No. 06-3054, 2008 WL 2597088 at *7 ("We continue to examine this claim [procedural irregularity] under *Woo*).

Jobe argues that a serious procedural irregularity exists because it took Fort Dearborn several months longer than the 45-days afforded by the ERISA statute to render its decision. The record establishes that Fort Dearborn did not meet the 45-day deadline. Under a prior version of ERISA, a claim was "deemed denied" when an administrator failed to issue a timely decision. *See Torres v. Pittston Co.*, 346 F.3d 1324, 1332 (11th Cir. 2003). Citing several out of Circuit cases, Jobe contends that where a plan administrator fails to make a decision within 45 days, a Court should conduct a de novo review because, by definition, the administrator has failed to exercise any discretion at all. *See Jebian v. Hewlett Packard Co.*,

13

310 F.3d 1173 (9th Cir. 2002)[1]; *see also Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625 (10th Cir. 2003). However, ERISA was amended effective January 20, 2001, and it now states that when a plan fails to issue a decision regarding disability benefits within 45 days, the claimant "shall be deemed to have exhausted the administrative remedies available." 29 C.F.R. § 2560.503-1(l). The precedent cited by Jobe was not decided under the new "deemed exhausted" language but rather under the previous "deemed denied" language. Even courts within the circuits cited by Jobe indicate that de novo review is unlikely to be the correct standard under the amended regulation. *See Peterson v. Fed. Express Corp. Long Term Disability Plan*, No. 05-1622, 2006 WL 1495307, at *6 (D. Ariz. May 24, 2006) ("[I]t is unlikely the Ninth Circuit would interpret [post-amendment ERISA] as requiring de novo review every time a plan administrator violates ERISA, no matter how inconsequential the violation."); *see also Neathery v. Chevron Texaco Corp. Group Accident Policy No. OK 826458*, No. 05-1883, 2006 WL 4690902, at *8 (S.D. Cal. July 31, 2006).

Within the Eighth Circuit, even under the "deemed denied" language, the mere presence of serious procedural irregularities does not, by itself, alter the applicable standard of review. *See Hillery v. Metro. Life Ins. Co.*, 453 F.3d 1087, 1090 (8th Cir. 2006); *see also McGarrah v. Hartford Life Ins. Co.*, 234 F.3d 1026, 1031 (8th Cir. 2000). While a less deferential standard would apply where a plan administrator has not used judgment in

---

[1] The case cited by Jobe was withdrawn by the court and substituted with another opinion in 2003. *See Jebian v. Hewlett-Packard Co. Employee Benefits Organization Income*, 349 F.3d 1098 (9th Cir. 2003). However, the proposition for which Jobe cited *Jebian* remains the same in the new opinion.

14

rendering a decision, *see McNeil v. Abiseid*, 203 Fed. App'x 748, 749 (8th Cir. 2006), where the plan administrator makes a decision regarding a participant's benefits, the less deferential standard of review would apply only if the alleged procedural irregularity is "so egregious that it might create a 'total lack of faith in the integrity of the decision making process.'" *Hillery*, 453 F.3d at 1091 (quoting *Layes v. Mead Corp.*, 132 F.3d 1246, 1251 (8th Cir. 1998)).

The record is silent as to why Fort Dearborn decided Jobe's claim after the 45-day period mandated in ERISA. However, the record shows that Fort Dearborn researched Jobe's claim, informed her of its decisions, and followed procedures throughout the appeals process. Fort Dearborn worked with Jobe in gathering and reviewing evidence, and allowed her multiple appeals before rendering its final decision. At no point did Jobe complain to Fort Dearborn, even after she retained counsel, that it was taking too long to render a decision. Instead, Jobe continued cooperating with Fort Dearborn, providing additional information as requested, all the while hoping to receive a positive decision. It was not until after Fort Dearborn rendered its final decision–and its third denial–that Jobe asserted Fort Dearborn had violated ERISA's 45-day requirement. As a result, Jobe cannot show how the procedural irregularity of issuing the first benefits determination in a tardy manner affected the substantive decision by Fort Dearborn. Moreover, she has not shown that Fort Dearborn acted dishonestly or from improper motive when it denied her claim. Jobe fails to present any evidence that the denial of benefits was the product of an arbitrary decision or the plan administrator's whim. Given the evidence, it cannot be said that this procedural irregularity

15

is so egregious that it creates a total lack of faith in the integrity of Fort Dearborn's decisionmaking process. Thus, the Court will not apply *Woo's* sliding scale of review. [2]

### D. Fort Dearborn's Decision to Terminate Benefits

"Applying an abuse of discretion standard, the 'administrator's decision to deny benefits will stand if a reasonable person could have reached a similar decision.'" *Ratliff v. Jefferson Pilot Fin. Ins. Co.*, 489 F.3d 343, 346 (8th Cir. 2007) (citing *Hillery,* 453 F.3d at 1090). A reasonable decision must be supported by substantial evidence, which is more than a scintilla but less than a preponderance. *Id.* "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*

Under the Eighth Circuit standard, substantial evidence exists to support Fort Dearborn's decision to deny benefits. Fort Dearborn requested the medical reports of eight of Jobe's physicians prior to denying her benefits. Dr. Franklin was the only doctor who claimed that Jobe was totally disabled, and Dearborn's three medical reviewers questioned the validity of Dr. Franklin's diagnosis due to the lack of medical evidence.

After Jobe's appeal, DRMS assigned the claim to a different adjustor. DRMS then obtained a new records review from a different doctor and an occupational analysis from a vocational consultant.[3] Dr. Friedman also reviewed the new information submitted after the

---

[2] As a practical matter, the sliding scale in Woo is not materially different in this case because the Court has considered Fort Dearborn's conflict as one factor in the Court's review.

[3] The report from the vocational expert is questionable. Her opinion about the ADA is inconsistent with Eighth Circuit precedent that holds that an employee is not disabled merely because she has a work related limitation. *See, Napreljac v. John Q. Hammons Hotels Inc.,* 505 F.3d 800 (8th Cir. 2007); *Kellogg v. Union Pacific R.R. Co.,* 233 F.3d 1083 (8th Cir. 2000). It

16

second appeal and stated that he did not find the new medical reports from Dr. Franklin persuasive. Dr. Friedman did state that it might be worthwhile to look at the SSA vocational report referenced in Jobe's unfavorable opinion. However, Dr. Friedman noted that DRMS/Fort Dearborn did not have a copy of this report, and the record does not reflect that the report was ever submitted to DRMS/Fort Dearborn.

Under ERISA, plan administrators do not have to give greater weight to the opinions of a claimant's treating physicians. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 829 (2003). Where medical records conflict, a plan administrator does not abuse its discretion by finding the employee is not disabled. *See Rutledge v. Liberty Life Assurance Co. of Boston*, 481 F.3d 655, 660 (8th Cir. 2007).[4] Furthermore, Dr. Hayes, Jobe's rheumatologist, checked the "yes" box on a form letter indicating that Jobe could work at her occupation if reasonable accommodations were made in the workplace. The evidence

---

also seems questionable whether real world employers would provide a medical transcriber with a sit stand option using a "longish" cord. Having observed transcribers for many years, the Court thinks it unlikely that an employee could stand up, operate a pedal and type for any significant period of time. Even an employee without any physical ailments would find this difficult. Nonetheless, there is no contrary evidence in the record and the vocational expert testified that she had spoken to an unidentified transcriptionist who said it was done. Under the abuse of discretion standard the Court cannot say that the report is so ridiculous that no reasonable fiduciary would rely on it.

[4] Plaintiff cites *Soron v. Liberty Life Assurance Co. of Boston*, 318 F.Supp.2d 19, 28 (N.D.N.Y. 2004), in support of her belief that Defendant had a duty to reconcile Dr. Franklin's medical records with those of the other doctors. However, in *Liberty Life*, the insurance company denied plaintiffs claim on the basis of the report of one medical doctor while at least four other doctors supported plaintiff's diagnosis of total disability. The company offered no explanation of why it based its denial on the opinion of only one doctor, when four other doctors' opinions conflicted. The present situation is quite different factually. Dr. Franklin is the only doctor who supported Jobe's claims of total disability. Further, unlike *Liberty Life*, it is clear that Fort Dearborn did consider all the relevant medical opinions.

supporting the denial, from Jobe's own doctor and from the medical file reviews, is more than a scintilla. "A plan administrator's discretionary decision is not unreasonable merely because a 'different, reasonable interpretation could have been made.'" *Parkman v. Prudential Ins. Co. of Am.*, 439 F.3d 767, 773 (8th Cir. 2006) (citing *McGee v. Reliance Standard Life Ins. Co.,* 360 F.3d 921, 924 (8th Cir. 2004)). Under these circumstances the Court cannot substitute its own decision if substantial evidence existed to support Fort Dearborn's decision. *See id.* Even considering Fort Dearborn's conflict of interest, the evidence in favor of its decision does not suggest that Fort Dearborn breached its fiduciary duty to Jobe by denying her claim.

### E. Consideration of SSA's Materials

Jobe claims that Fort Dearborn's denial of benefits could not possibly be reasonable, even under the abuse of discretion standard, because the SSA's Appeal council found her to be disabled. However, this decision was not available to Fort Dearborn/DRMS when they were considering Jobe's claims. In fact, on December 19, 2005, Fort Dearborn/DRMS advised Jobe that her second appeal was denied and that all administrative remedies had been exhausted. (EA at clm20061-63). It was not until September 5, 2006, that Jobe informed Defendants of the favorable decision from the SSA Appeals Council. (EA at clm20013-57). "[R]eview under the deferential standard is limited 'to evidence that was before' the Committee." *Cash v. Wal-Mart Group Health Plan*, 107 F.3d 637, 641 (8th Cir. 1997) (citing *Collins v. Cent. States, Se. & Sw. Areas Health & Welfare Fund*, 18 F.3d 556, 560 (8th Cir. 1994)). Additional evidence gathering is not permitted under the abuse of discretion review.

18

*See Brown v. Seitz Foods, Inc., Disability Benefit Plan*, 140 F.3d 1198, 1200 (8th Cir. 1998). Therefore the Court can not consider the SSA's decision because it was not before Fort Dearborn/DRMS when they reviewed Jobe's claim.

### F. Vexatious Refusal - Attorney's Fees

Jobe may collect under the vexatious refusal to pay claim only "if it appears from the evidence that [the insurance] company has refused to pay such loss without reasonable cause or excuse." § 375.420, RSMo. Because Jobe did not prevail in this action, she cannot collect attorney's fees. *See Jessup v. Alcoa, Inc.*, 481 F.3d 1004, 1008 (8th Cir. 2007).

## IV. Conclusion

Accordingly, it is hereby

ORDERED that Plaintiff Ruth L. Jobe's Motion for Summary Judgment [Doc. # 33] is DENIED. It is further

ORDERED that Defendant Medical Life Insurance Company, n.k.a. Fort Dearborn Life Insurance Company's Motion for Summary Judgment [Doc. # 29] is GRANTED.

s/ Nanette K. Laughrey<br>NANETTE K. LAUGHREY<br>United States District Judge

Dated: July 21, 2008
Jefferson City, Missouri