**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| RUTH L. JOBE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07-4152-CV-C-NKL |
| | ) | |
| MEDICAL LIFE INSURANCE | ) | |
| COMPANY, n.k.a. FORT DEARBORN | ) | |
| LIFE INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Plaintiff Ruth L. Jobe ("Jobe") claims that Defendant Medical Life Insurance

Company, n.k.a. Fort Dearborn Life Insurance Company ("Fort Dearborn"), wrongfully

denied her claim for benefits under a long-term disability plan ("plan") in violation of the

Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. ("ERISA"). Fort

Dearborn denies this claim, arguing that Jobe was able to continue working as a medical

transcriptionist and, thus, did not qualify for benefits under the plan. Pending before the

Court are cross-motions for summary judgment [Doc. # 63; Doc. # 67]. The Court DENIES

Fort Dearborn's motion for summary judgment and GRANTS Jobe's motion for summary

judgment.

**I.      Procedural Background**

The Court previously reviewed the plan administrator's decision to deny Jobe benefits

1

under the deferential abuse of discretion standard, granting summary judgment in favor of

Fort Dearborn. [Doc. # 47.] Jobe appealed the application of the abuse of discretion standard

to the United States Court of Appeals for the Eighth Circuit, which reversed and remanded

the case so that this Court could apply a de novo standard of review.  [Doc. # 58.]

## II.    Factual Background

On July 29, 2003, Jobe became eligible for benefits under a Group Insurance Policy

("policy") with Fort Dearborn through her employment with Lake Regional Health System

as a medical transcriptionist.  On July 30, 2003, Jobe enrolled in the plan.  [Exhibit

Attachment ("EA") at ltdclm00158.]  The plan provides benefits to employees if they

become totally disabled by a sickness. Under the policy:

> SICKNESS means illness, disease, pregnancy, or complications of
> pregnancy.  The sickness must begin while the Employee is insured under
> the policy.
>
> MATERIAL AND SUBSTANTIAL DUTIES means duties that:
>
>> 1. are normally required for the performance of the Insured's Regular
>> Occupation; and
>>
>> 2. cannot be reasonably omitted or modified . . . .
>
> TOTAL DISABILITY or TOTALLY DISABLED means during the
> elimination period and the next (24) months of disability the Insured is:
>
>> 1.  unable to perform the Material And Substantial Duties of the
>> Insured's Regular Occupation because of a disability:
>>
>>> a.  due to the Insured's Sickness or Injury; and
>>>
>>> b.  that started while insured under this coverage; and

2. after 24 months of benefits have been paid, the Insured will continue to receive payment only if the Insured cannot perform with reasonable continuity the Material And Substantial Duties of his Regular Occupation or any other occupation for which he is or becomes reasonably fitted by training, education, experience, age and physical and mental capacity.

REGULAR OCCUPATION means the occupation the Insured is routinely performing when the Insured's disability begins. We will look at the Insured's occupation as it is normally performed in the national economy, instead of how other work tasks are performed for a specific Employer or at a specific location.

[EA at pol100004-6.]

On January 22, 2001, Jobe was diagnosed with polycythemia and polycythemia vera, conditions involving a net increase in the number of red blood cells. [EA at clm10618.] Jobe also experienced vision problems throughout 2003. [EA at clm10519-25.] Jobe's ophthalmologist, Dr. Timothy D. Lischwe, noted her history of polycythemia in his records of Jobe's visits. [EA at clm10520-23.] Dr. Lischwe noted that Jobe's visual acuity showed left eye vision at 20/25, right eye vision of 20/HM on peripheral to two feet, which is less than 20/200. Dr. Lischwe's assessment was amaurosis fugax and ischemic optic neuropathy. *Id.* On April 15, 2004, Dr. Stanley P. Hayes ("Dr. Hayes"), a rheumatologist, diagnosed Jobe with fibromyalgia. [EA at clm10489.] Dr. Hayes noted that "clinical symptoms and exam would indicate soft tissue pain only consistent with Fibromyalgia." *Id.* On June 23, 2004, Jobe underwent a hysterectomy. [EA at clm10405.] Jobe's gynecologist, Dr. Robert C. Neilson ("Dr. Neilson"), noted the history of polycythemia in his comments on the operation. *Id.*

On July 2, 2004, Jobe completed a claim for benefits under the plan and submitted it to Fort Dearborn along with a statement from her attending physician, Dr. L. Chris Franklin ("Dr. Franklin"). [EA at ltdclm00156-57.] Dr. Franklin listed multiple diagnoses on the form, including "Fibromyalgia, CVA/TIA, worsening polycythemia rubra vera resulting in prolonged severe hemorrhage & hysterectomy." [EA at ltdclm00157.] Dr. Franklin also noted in the "objective findings" section of the form that "Pt. has limited range of motion in joints, spine, hands, fingers, multiple neurologic deficits – treatment limited due to other medical conditions as listed." *Id.* On the same form, Dr. Franklin checked the "functional capacity (American Heart Ass'n)" box as "Class 4: Complete Limitation." *Id.* Dr. Franklin checked the "physical impairments (as defined in Federal Dictionary of Occupational Titles)" box as "Class 5 - Severe Limitation of functional capacity; including minimum (sedentary) activity." *Id.* Dr. Franklin also checked the mental impairments box as "Class 3 - Patient is able to engage in only limited stress situations and engage in only limited interpersonal relations (moderate limitations)." *Id.* On August 4, 2004, Dr. Franklin wrote a letter describing Jobe's medical conditions in further detail, stating:

> This patient will never be able to return to work. She will not be released by me to return to work in any form or type. She has impaired motor skills. Simple grasp is limited.... She is not cleared for any work activity, including sedentary, light, medium, or heavy activity.... She is unable to lift or work in any environment because of her multiple medical diagnoses, as listed above, multiple neurologic deficits, memory and cognitive impairments, severe chronic debilitating pain, severe chronic fatigue, and her lack of treatment options. She is to avoid stress. She is to obtain as much rest as possible, take her medications as described [sic], and do gentle exercises within her limitations. She is to continue to see me for monitoring of her CBC, phlebotomy as needed, and for monitoring of symptoms and medication. This

patient is totally disabled. Her condition is permanent and terminal.

[EA at 10170-76.]

On August 13, 2004, Fort Dearborn contacted Jobe to advise her that they had received her claim and that Disability RMS ("DRMS") would be handling the processing of her claim. [EA at ltdclm00162.] Fort Dearborn faxed Jobe's claim to DRMS on August 13, 2004. [EA at ltdclm00153-54.] However, Jobe contacted Fort Dearborn on August 30, 2004 and indicated that DRMS informed her that they had no record of her claim. [EA at ltdclm00152.] On September 15, 2004, emails were exchanged between Fort Dearborn and DRMS stating, "Wow! This is a crazy one!" [EA at ltdclm00145.]

DRMS did eventually receive the claim and began collecting medical records from Jobe's previous medical providers. DRMS collected records from Dr. Franklin, Dr. George Anthony Koch (infectious diseases), Dr. Lischwe, Dr. Lenworth Johnson (neuro-opthalmology), Dr. Trendle (hematology), Dr. Paul Gill (hematology), Dr. Hayes, and Dr. Nielsen.

On September 20, 2004, as part of a medical file review for Jobe's short-term disability carrier, Dr. Sharon Hogan found that, based upon the medical data available to her, the diagnoses of TIA/CVA and polycythemia vera were unsupported by evidence. Dr. Hogan did not expressly state that the evidence supported Jobe's diagnosis of fibromyalgia. Dr. Hogan did indicate that if four specific restrictions on Jobe's work could be accommodated, then "full-time work capacity" would not be precluded. [EA at clm10227.] Dr. Hogan contacted Dr. Hayes, Jobe's rheumatologist, via a pre-printed letter. She included

a list of restrictions due to fibromyalgia which included:

- Changes in position as needed, with no prolonged sitting, standing, or walking at any one give [sic] time.
- No lifting more than 20 lbs. occasionally, and 10 lbs. frequently.
- No prolonged static posturing.
- No prolonged activities with the arms above shoulder level.

*Id.* The form asked Dr. Hayes: "If [the aforementioned] restrictions and limitations can be accommodated in the workplace, they should not preclude full-time work capacity." Dr. Hayes checked yes in the box next to this question. [EA at clm 10215.] After receiving a similar form from Dr. Hogan, Dr. Franklin responded by sending a written letter expressing his disagreement with Dr. Hogan and reiterating his previous diagnoses in detail. [EA at clm 10210-13.]

DRMS then requested Dr. Thomas Reeder to review Jobe's medical file. He issued his report on October 26, 2004. [EA at clm10153-59.] Dr. Reeder stated that "most, if not all, of Dr. Franklin's claimed diagnoses are not supported by medical documentation." [EA at clm10158.] Dr. Reeder did not state that Jobe needed any accommodations in the workplace in order to continue full-time work capacity, nor did he make a statement as to Jobe's work ability.

Based on this record, Fort Dearborn denied Jobe's claim on November 15, 2004. [EA at clm00052.] On the same day, an employee at DRMS emailed Jobe's claim handler and stated, "I loved your 9 page denial letter." [EA at clm10028.] Jobe appealed the decision and sent a 16-page letter expressing her disagreement with Fort Dearborn's decision. After assigning Jobe's appeal to a different claims handler, DRMS obtained an additional medical

file review from Dr. Mark Friedman. [EA at clm00048; EA at clm20318-35.] Dr. Friedman stated that Dr. Franklin's records "provide no basis for the conclusion of Dr. Franklin that the claimant is disabled due to the multiple conditions claimed." Dr. Friedman's conclusion was "[n]o evidence of limitations from a sedentary to light position consistent with a medical transcriptionist position." [EA at clm20335.] Dr. Franklin received a copy of Dr. Friedman's report and responded, "No, I don't agree," without further explanation. [EA at clm20314.]

DRMS also obtained advice from a vocational consultant, Ruby McDonald. On February 25, 2005, McDonald noted:

> First, it is a sedentary position. Secondly, there could be, and in fact there typically are . . . allowances for changes in position and ergonomically proper work stations, by employer of people in this profession. The ability to change positions from sitting to standing and vice versa can easily be accomplished with the use of a headset with a longish cord and/or a sit/stand work station . . . . Allowing an employee to change positions as needed and/or providing a sit-stand workstation are reasonable accommodations under the Americans with Disability Act (ADA) . . . . One transcriptionist I recently interviewed advised the following: Working as a transcriptionist almost requires 5-10 minute breaks to stretch, change positions, etc . . . . Headsets enable the transcriptionist to be able to go from a sit to stand position at anytime.

[EA at 20286-89.] McDonald also submitted information from an Occupational Directory which stated that the medical transcriptionist occupation requires, "Lifting, Carrying, Pushing, Pulling 10 lbs. occasionally. Mostly sitting, may involve standing or walking for brief periods of time." *Id.* A DRMS employee responded to McDonald via email, stating, "Great. Thank [sic] Ruby." [EA at clm20290.]

On February 28, 2005, DRMS again denied Jobe's claim. On August 25, 2005, Jobe

requested a second appeal, submitting additional medical information from Dr. Franklin and information from an unfavorable Social Security Administration ("SSA") decision. The information from Dr. Franklin included a comprehensive analysis of Jobe's condition and a "Residual Functional Capacity Questionnaire," which indicated that Jobe could only sit, stand, walk, and work 0-1 hours in an 8 hour time period, and that her limitations were due to severe chronic pain attributable to fibromyalgia and chronic fatigue immune dysfunction syndrome. DRMS obtained a further medical review from Dr. Friedman in which he stated that his opinion of Jobe's status remained unchanged. In his October 12, 2005 addendum, Dr. Friedman also noted that "the only claim of possible substance is the vocational rehabilitation evaluation" performed by the SSA. He recommended that a vocational expert review this report. [EA at clm20071-77.]

As alluded to in Dr. Friedman's addendum, at the request of an administrative law judge ("ALJ"), vocational expert Cathy Hodgson, Ed.D., was present at Jobe's October 19, 2004 SSA hearing. According to the ALJ:

> The vocational expert testified that an individual with the claimant's determined residual functional capacity would be unable to perform the claimant's past relevant work. The vocational expert testified that there are no transferable skills at the claimant's determined residual functional capacity. The undersigned finds the vocational expert is qualified and credible. Accordingly, the undersigned finds that the claimant cannot perform her past relevant work.

[EA at clm20122.]

Despite these findings regarding Jobe's inability to perform her past relevant work, it was not until May 19, 2006 that the SSA Appeals Council issued her a fully favorable

decision:

> Considering the entire evidence of record, the Appeals Council finds that since the alleged onset date of March 29, 2004, the claimant has lacked the residual functional capacity to perform even sedentary work on a regular and sustained basis. The claimant's combination of impairments results in the following limitations on her ability to perform work-related activities: the claimant is unable to lift 10 pounds; stand or walk for more than one hour each in an eight-hour workday; she can do no prolonged sitting; she can occasionally reach, handle and finger; she should avoid temperature extremes; and she is limited to simple, unskilled work. At the fourth step of the sequential evaluation process, the Appeals Council finds that claimant would be unable to perform her past relevant work as a medical transcriber, clerk or waitress, as these jobs require greater levels of exertion.
> . . . .
> The claimant's additional non-exertional limitations further restrict her from performing any significant range of sedentary work on a regular and sustained basis. Therefore, the Appeals Council finds that the claimant is unable to make a vocational adjustment to work which exists in significant numbers in the national economy and concludes that the claimant has been continuously disabled.

[EA at clm20020-21.]

On September 5, 2006, Jobe informed Fort Dearborn of the favorable appeals decision she had received from the SSA on May 19, 2006. [EA at clm20015-25.] However, by this time, Fort Dearborn had already closed Jobe's claim. Previously, on December 19, 2005, Fort Dearborn had denied Jobe's claim for the third time, noting that this was the "final review" and that Jobe had exhausted all administrative remedies. [EA at clm20061-63.] On October 6, 2006, Fort Dearborn informed Jobe that its position remained unchanged. On June 25, 2007, Jobe commenced this action against Fort Dearborn.

## III.    Summary Judgment Standard

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion" and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the non-moving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a district court must look at the record and any inferences to be drawn from it in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is not proper if the evidence is such that a reasonable fact-finder could return a verdict for the non-moving party. *Id.* at 248.

## IV. Discussion

### A. ERISA Standard of Review

ERISA provides a plan beneficiary with the right to judicial review of a benefits determination. *See Woo v. Deluxe Corp.,* 144 F.3d 1157, 1160 (8th Cir. 1998). The Court generally reviews a denial of benefits governed by ERISA de novo. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). However, where the plan gives the

administrator discretionary authority to grant or deny benefits, the Court reviews the administrator's determination for an abuse of discretion. *Id.*

As mentioned above, the Eighth Circuit has decided that the de novo standard of review applies in this case.

> Because the policy's failure to grant discretion results in the *de novo* standard, the policy controls over the inconsistent grant of discretion to the administrator in the summary plan description. Accordingly, the administrator was not entitled to discretionary authority in determining eligibility for benefits or construing the plan's provisions. Consequently, the district court should not have reviewed the administrator's decision for abuse of discretion but, rather, should have reviewed it *de novo*.

[Doc. # 58-1 at 13.] In accordance with the Eighth Circuit's mandate, this Court now reviews the administrator's decision de novo.

### B.    Fort Dearborn's Renewed Motion for Summary Judgment

Even under de novo review, Fort Dearborn contends that it made the correct decision in denying Jobe benefits. Fort Dearborn makes two related arguments to support this contention: (i) that the Court should not consider the SSA materials that became available only after the administrative record closed; and (ii) that the weight of the medical evidence is against Jobe by a ratio of four to one.

### 1.  Consideration of SSA Materials

As a threshold matter, the Court must determine whether to consider the SSA materials that became available to the parties only after Fort Dearborn's final review and denial of Jobe's disability claim. Previously, reviewing the administrator's decision under the deferential standard, the Court determined that it could not consider the 2006 favorable

11

decision from the SSA because it had not been before Fort Dearborn or DRMS when they reviewed Jobe's claim. [Doc. # 47 at 18-19.] There, the Court cited Eighth Circuit precedent for the proposition that such additional evidence is not permitted under abuse of discretion review. *Id.* (citing *Brown v. Seitz*, 140 F.3d 1198, 1200 (8th Cir. 1998); *Cash v. Wal-Mart Group Health Plan*, 107 F.3d 637, 641 (8th Cir. 1997)).

In support of its argument that the Court should not consider the SSA materials here, Fort Dearborn cites *Barnhart v. UNUM Life Ins. Co. of Am.*, 179 F.3d 583, 590 (8th Cir. 1999). [Doc. # 63 at 15.] However, *Barnhart* is inapposite, as it was decided under the deferential standard of review, not under de novo review. *Barnhart,* 179 F.3d at 587, 589. *Barnhart* merely reiterates the rule from the cases that the Court previously cited under abuse of discretion review.

Under de novo review, the caselaw provides courts with greater flexibility. While courts are discouraged from considering evidence in addition to that before an administrator when reviewing that administrator's decision de novo, "the purpose of this caveat is to 'ensure expeditious judicial review of ERISA benefit decisions and to keep district courts from becoming substitute plan administrators.'" *Cash*, 107 F.3d at 641-42 (quoting *Donatelli v. Home Ins. Co.*, 992 F.2d 763, 765 (8th Cir. 1993)). Moreover, "[a] district court may admit additional evidence in an ERISA benefit-denial case . . . if the plaintiff shows good cause for the district court to do so." *Brown*, 140 F.3d at 1200 (citing *Ravenscraft v. Hy-Vee Employee Ben. Plan & Trust*, 85 F.3d 398, 402 (8th Cir. 1996); *Davidson v. Prudential Ins. Co. of Am.*, 953 F.2d 1093, 1095 (8th Cir. 1992)).

12

Here, the Court's consideration of the additional SSA materials will cause no delay because it requires no additional discovery. Additionally, unlike in *Brown* and *Davidson*, where the plaintiffs offered no explanation why they could not have timely provided the additional evidence, here Jobe's offer of the SSA favorable decision is clearly "more than a last-gasp attempt to quarrel with [Defendant's] determination." *Davidson*, 953 F.2d at 1095. The SSA Appeals Council issued the favorable decision on May 19, 2006. On September 5, 2006, Jobe informed Fort Dearborn of this favorable decision. However, Jobe had exhausted all administrative remedies and her claim had been closed since Fort Dearborn's December 19, 2005 "final review." Through no fault of Jobe's, the SSA Appeals Council issued its fully favorable decision too late for it to be considered by Fort Dearborn before its final review, even though the ALJ had previously entered the same finding. Therefore, Jobe has shown good cause for the Court to consider the SSA's 2006 favorable decision.

Regardless, the Court finds the SSA Appeals Council's May 2006 fully favorable decision of minor import for purposes of Plaintiff's motion for summary judgment. Of much greater evidentiary significance is the October 2004 opinion of the ALJ summarizing the testimony of Dr. Hodgson, the neutral vocational expert, whom the ALJ found "qualified and credible." [EA at clm20122.] Dr. Hodgson concluded that "claimant cannot perform her past relevant work." *Id.* Fort Dearborn does not dispute that Dr. Hodgson's testimony occurred well before the administrative record closed – in fact, just two months after the date of Jobe's alleged disability.

### 2. The Medical Evidence

Fort Dearborn also argues that it made the correct decision in denying Jobe benefits because the weight of the medical evidence is against her by a ratio of four to one. Fort Dearborn apparently submits a theory that quantity of medical evidence is more important that quality of medical evidence. In connection with its rejection of the SSA materials, Fort Dearborn argues that the "treating physician rule" – giving more weight to the opinion of doctors that treat the patient, as opposed to those who merely review the patient's file – "does not apply here under ERISA." [Doc. # 63 at 15.] In support of this argument, Fort Dearborn cites *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). However, *Black & Decker* held only that even though the SSA is required to use the treating physician rule, insurance companies are not subject to the same requirement when conducting their own administrative reviews. *Id. Black & Decker* does not stand for the opposite conclusion that insurance companies – much less Courts – are forbidden from giving more weight to the opinion of doctors who treat the patient than to those who merely review the patient's file.

Under *Black & Decker*, the Court could not have required – and did not require – Fort Dearborn to have used the treating physician rule under the abuse of discretion standard. However, as mandated by the Eighth Circuit, the Court must now review de novo the decision to deny Jobe benefits. Just as insurance companies are not forbidden from using the treating physician rule, neither is the Court. The Court will not simply count the number of doctors siding with each party and find for whichever party has procured the greatest quantity of medical opinions supporting it. Rather, the Court will evaluate the quality, as well as the

quantity, of the evidence before it. To do this, the Court may consider, inter alia, the doctors' varying levels of familiarity with the patient's condition.

In applying the conclusions reached by the various doctors to the specific issue here of Jobe's capacity to work, it should also be noted that the Court previously cast doubt on the legal and factual conclusions reached by Fort Dearborn's vocational consultant, Ms. McDonald. Under the abuse of discretion standard, the Court determined that it could not say that McDonald's report was "so ridiculous that no reasonable fiduciary would rely on it." [Doc. # 47 at 17 n.3.] Under de novo review, however, the Court declines to rely on McDonald's report.

Based on the record here, the Court cannot find as a matter law that Jobe was capable of performing her regular occupation as a medical transcriptionist. Fort Dearborn's Renewed Motion for Summary Judgment is denied.

### C. Jobe's First Amended Motion for Summary Judgment

Under the legal theory advanced by Jobe in her motion for summary judgment, "she is entitled to the disability benefits for which she paid a premium to Defendant" if it is found that she had any disability prohibiting her from performing any duty of her regular occupation as it is normally performed in the national economy. [Doc. # 68 at 19.] Jobe draws this language from the critical clause of the policy:

> TOTAL DISABILITY or TOTALLY DISABLED means during the elimination period and the next (24) months of disability the Insured is:
>
> 1. unable to perform the Material And Substantial Duties of the Insured's Regular Occupation because of a disability:

a. due to the Insured's Sickness or Injury; and

b. that started while insured under this coverage; and

2. after 24 months of benefits have been paid, the Insured will continue to receive payment only if the Insured cannot perform with reasonable continuity the Material And Substantial Duties of his Regular Occupation or any other occupation for which he is or becomes reasonably fitted by training, education, experience, age and physical and mental capacity.

[EA at pol100006.]

At oral argument on September 9, 2010, Jobe's counsel clarified what are "the disability benefits" to which Jobe claims she is entitled. Jobe argues only that her medical condition prevented her from performing her regular occupation. Jobe does not argue in this ERISA action that the medical condition prevented her, or currently prevents her, from performing "any other occupation for which [she] is or becomes reasonably fitted by training, education, experience, age and physical and mental capacity." [EA at pol100006.]

Fort Dearborn is correct that the policy "provides two levels of 'Total Disability' coverage." [Doc. # 63 at 2.] For the first 24 months of coverage after the date of disability, Jobe is entitled to benefits if a medical condition prevents her from performing her regular occupation as it exists in the national workforce. After that, she is entitled to benefits if the condition prevents her from performing "any other occupation for which [she] is or becomes reasonably fitted by training, education, experience, age and physical and mental capacity." [EA at pol100006.] Since Jobe argues only that her medical condition prevented her from

performing her regular occupation, the sole issue before the Court in this case is whether Jobe is entitled to 24 months of benefits.

Jobe argues that the decision to deny her benefits was incorrect, considering (1) the medical evidence, and (2) the vocational expert evidence.

### 1. The Medical Evidence

Jobe asserts that the opinion of her primary treating physician, Dr. Franklin, should be given more weight than that "of doctors, with clear bias, whom [sic] have never laid eyes on Ms. Jobe, much less actually examined her." [Doc. # 68 at 21.] As mentioned above, the Court may indeed consider the doctors' varying levels of familiarity with the patient's condition. However, the "treating physician rule" is not binding on the Court such that it must give greater weight to the opinion of Dr. Franklin than to those doctors who reviewed Jobe's medical records.

Fort Dearborn contends that, even if the Court were to give greater weight to treating physicians in interpreting the medical evidence, it should give greater weight to the opinion of Dr. Hayes than to that of Dr. Franklin. According to Fort Dearborn, Dr. Hayes, Jobe's rheumatologist, "agree[d] that, with reasonable accommodations, plaintiff could work." [Doc. # 63 at 6.] Therefore, Fort Dearborn determined that there was no need to examine Jobe because it took the position – even after learning of the ALJ's finding that Jobe could not perform her past relevant work – that she had not carried her burden of showing that she was totally disabled.

However, Dr. Hayes was merely responding to a complex hypothetical question:

Reasonable restrictions and limitations with fibromyalgia are:

- Changes in position as needed, with no prolonged sitting, standing, or walking at any one give [sic] time.
- No lifting more than 20 lbs. occasionally, and 10 lbs. frequently.
- No prolonged static posturing.
- No prolonged activities with the arms above shoulder level.

If these restrictions and limitations can be accommodated in the workplace, they should not preclude full-time work capacity.

Do you agree?  Yes ____  No ____

[EA clm10215.]  Although Dr. Hayes checked the "Yes" box, he was hardly opining as to whether the four listed restrictions and limitations were, in fact, "reasonable accommodations" for a medical transcriptionist.  More importantly, the most natural reading of the phrase "full-time work capacity" would have led Dr. Hayes to believe that the question referenced Jobe's ability to perform any full-time work, not full-time work as a medical transcriptionist, the only relevant issue here.  Meanwhile, the same document cited by Fort Dearborn confirms that Dr. Hayes had already drawn upon his medical expertise to diagnose Jobe's fibromyalgia.  *Id.*  In contrast, the relationship of Jobe's medical condition to the "Material And Substantial Duties" of her regular occupation as a medical transcriptionist is an issue for the vocational experts.  [EA pol00004, pol00006.]

Setting the vocational question aside momentarily, the Court concludes from the medical evidence that Jobe did indeed suffer from fibromyalgia.  Dr. Franklin and Dr. Hayes – Jobe's treating physicians, with the greatest level of familiarity with her condition – agreed on this point.  Furthermore, not even the doctor hired by Fort Dearborn to follow up on Dr.

Hayes's fibromyalgia diagnosis, Dr. Hogan, contested the fibromyalgia diagnosis. The weight of the medical evidence supports Jobe's claim that she suffered from fibromyalgia.

## 2. The Vocational Expert Evidence

Jobe correctly notes that the testimony of Dr. Hodgson, the vocational expert relied upon by the ALJ, conflicts with that of Fort Dearborn's vocational consultant, Ms. McDonald. [Doc. # 68 at 25.] Jobe also points out that the Court previously cast doubt on McDonald's legal and factual conclusions, even as it reviewed Fort Dearborn's decision under the deferential standard:

> The report from [Defendant's] vocational expert is questionable. Her opinion about the ADA is inconsistent with Eighth Circuit precedent that holds that an employee is not disabled merely because she has a work related limitation. It also seems questionable whether real world employers would provide a medical transcriber with a sit stand option using a "longish" cord. Having observed transcribers for many years, the Court thinks it unlikely that an employee could stand up, operate a pedal and type for any significant period of time. Even an employee without any physical ailments would find this difficult.

[Doc. # 47 at 16-17 n.3 (citations omitted).] In addition, Fort Dearborn's policy provides:

> REGULAR OCCUPATION means the occupation the Insured is routinely performing when the Insured's disability begins. We will look at the Insured's occupation as it is normally performed in the national economy, instead of how other work tasks are performed for a specific Employer or at a specific location.

[EA at pol100004-6.] Consideration of the medical transcriptionist occupation "as it is normally performed in the national economy" only confirms the Court's initial impression that McDonald's suggested modifications to Jobe's work routine are unrealistic.

The Court finds more credible and logically coherent the testimony of the neutral vocational expert, Dr. Hodgson, before the ALJ:

> The vocational expert testified that an individual with the claimant's determined residual functional capacity would be unable to perform the claimant's past relevant work. The vocational expert testified that there are no transferable skills at the claimant's determined residual functional capacity. The undersigned finds the vocational expert is qualified and credible. Accordingly, the undersigned finds that the claimant cannot perform her past relevant work.

[EA at clm20122.]

Considering the medical evidence and the vocational evidence together, the Court concludes that Jobe suffered from fibromyalgia and that she could not perform her past relevant work during the relevant 24-month period. Therefore, the Court finds that she is entitled to 24 months of benefits under the policy. Jobe does not request that the Court award her any further benefits in this case.

### 3. Attorney Fees

The only remaining issue before the Court is Jobe's claim that she is entitled to attorney fees. [Doc. # 68 at 32.] The Eighth Circuit has held:

> ERISA is remedial legislation which should be liberally construed to effectuate Congressional intent to protect employee participants in employee benefits cases. A district court considering a motion for attorney's fees under ERISA should therefore apply its discretion consistent with the purpose of ERISA, those purposes being to protect employee rights and to secure effective access to federal courts.

*Welsh v. Burlington Northern, Inc. Employee Benefits Plan*, 54 F.3d 1331, 1342 (8th Cir. 1995). In the Eighth Circuit, there is no longer a presumption in favor of attorney fees in an

ERISA action. *Martin v. Arkansas Blue Cross & Blue Shield*, 299 F.3d 966, 972 (8th Cir. 2002) (en banc). Instead of simply presuming that attorney fees will be awarded, in exercising its discretion, the Court must now consider the five non-exclusive factors laid out by the Eighth Circuit:

> (1) the degree of culpability or bad faith of the opposing party; (2) the ability of the opposing party to pay attorney fees; (3) whether an award of attorney fees against the opposing party might have a future deterrent effect under similar circumstances; (4) whether the parties requesting attorney fees sought to benefit all participants and beneficiaries of a plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

*Id.* at 969 n.4 (citing *Lawrence v. Westerhaus*, 749 F.2d 494, 496 (8th Cir. 1984)). The Court is "not obligated to regurgitate, rote" these factors; rather, they "are well-recognized general guidelines which provide direction to the district court . . . ." *Id.* at 972. "[F]ew, if any, fee awards have been denied a prevailing plaintiff in ERISA cases nationwide," even though most circuits do not employ any kind of presumption in favor of fees. *Id.*

Citing no law, Fort Dearborn mentions only in a footnote that Jobe's "request is premature, as a motion for fees should not be brought until after the Court determines who the prevailing party is, e.g., after ruling on the pending cross-motions for summary judgment." [Doc. # 73 at 8 n.18.] The Court has now determined that Jobe is the prevailing party and Fort Dearborn has been aware of Jobe's claim for attorney's fees throughout this litigation, and, specifically, in Jobe's motion for summary judgment. Fort Dearborn did not address the issue and that voluntary decision should not preclude consideration of Jobe's

request. Therefore, the Court will proceed with the analysis guided by the *Westerhaus* principles.

First, the Court previously found the administrator's decision to be within the scope of reasonableness, granting summary judgment for Fort Dearborn under the abuse of discretion standard. Therefore, the Court cannot now determine that Fort Dearborn has acted in bad faith. However, the remaining four *Westerhaus* factors weigh in favor of awarding attorney fees to Jobe. On the merits, Fort Dearborn withheld benefits from Jobe for six years based on the questionable opinion of a vocational consultant paid by Fort Dearborn. [Doc. # 47 at 17 n.3.] Fort Dearborn also relied heavily on its questionable interpretation of Jobe's rheumatologist's check-mark in response to a convoluted hypothetical question – discounting Dr. Hayes's medical opinion that Jobe suffered from fibromyalgia.

Fort Dearborn is able to pay Jobe's attorney fees. Furthermore, the party requesting attorney fees, Jobe, challenged the Court's previous decision and litigated the standard of review issue to the Eighth Circuit and won – resolving an important legal issue and benefitting future plan members. Finally, awarding attorney fees might deter future denials of benefits under similar circumstances.

For these reasons, the Court awards Jobe attorney fees. As Jobe's counsel agreed at oral argument, Jobe will submit to the Court her attorney fees records for review before a sum certain is awarded. Those records must be filed within ten days of the date of this Order.

## III.  Conclusion

Accordingly, it is hereby ORDERED that Fort Dearborn's Renewed Motion for Summary Judgment [Doc. # 63] is DENIED, and Jobe's Motion for Summary Judgment [Doc. # 67] is GRANTED.


                                          s/ Nanette K. Laughrey
                                          NANETTE K. LAUGHREY
                                          United States District Judge

Dated: September 17, 2010
Jefferson City, Missouri